## CRISCOE *v*. ADAMS.

[85 South. 119, In Banc. No. 21162.]

1. ABATEMENT AND REVIVAL. *Administrator held authorized in term time to revive suit to cancel deed without notice of motion.*

Where a complainant filed a suit in the chancery court to cancel a deed and after service of process on the defendant died, the administrator was authorized, under section 724, Code 1906 (section 507, Hemingway's Code), to revive the suit in his name for the benefit of the heirs without serving notice of his motion to revive on the defendant where said revivor was made in term time of said court.

2. ABATEMENT AND REVIVAL. *Executors and administrators. Judgment. Administrator may revive suit to set aside deed; may in certain cases sell land to pay debts. decree will not be reviewed on collateral attack after two years if court had jurisdiction.*

Under the laws of this state, the administrator has the right in certain cases to sell land to pay debts, and he may revive and prosecute to judgment a suit to set aside a deed to land for condition broken in certain cases. And the court will not on collateral attack review the rightfulness of the decree sought to be collaterally attacked after two years, nor will it look to the evidence to see whether the decree was proper, when the court had jurisdiction of the subject-matter and the parties, on collateral attack.

3. JUDGMENT. *When judgment will not be set aside for irregularities or errors in conclusions of law, stated.*

Where a court has jurisdiction of the subject-matter and of the parties and renders judgment therein and no appeal is taken, and no bill of review within the time allowed by law therefor, the court will not set aside such judgment for mere irregularities or for error in conclusions of law.

APPEAL from chancery court of Walthall county.
HON. R. W. CUTRER, Chancellor.

Suit in partition by J. L. Criscoe against L. M. Adams. Decree for defendant, and plaintiff appeals. Affirmed.

*Geo. Butler* and *Ford & Lotterhos,* for appellant.

Appellant is not concluded by the decree in *J. F. Holmes, Administrator,* v. *George Connerly, et al.,* cause No. 1620. There are several reasons why appellant is not concluded by the decree in the above mentioned cause. We will discuss these points in the following sub-heads:

## A

Even if Frances Manning had not executed the deed to Eugenia Green and Seaph Green, dated October 16, 1908, prior to the time she filed the suit to cancel her deed to George Connerly and Eugenia Green, she would not have had any standing in court to cancel the last-mentioned deed. She does not seek to cancel this deed for any fraud or misrepresentation in its procurement, but the whole attack is predicated upon the failure of George Connerly to carry out his agreement to care for Frances Manning for the remainder of her life.

In *Dixon* v. *Milling,* 102 Miss. 449, it is held: "A deed conveying land in consideration of an agreement to support the grantor, cannot be cancelled for breach of the undertaking, the remedy being by action on the undertaking." *Lee* v. *McMorris,* 107 Miss. 889; *Lowrey* v. *Lowrey,* 111 Miss. 153; *Dixon* v. *Milling,* 102 Miss. 449; *Gadberry* v. *Shepherd,* 27 Miss. 203; *Memphis etc., Railroad Co.* v. *Neighbors,* 51 Miss. 412; *Thornton* v. *Natchez,* 88 Miss. 1; *Soria* v. *Harrison County,* 96 Miss. 109; *Thornton* v. *Natchez,* 88 Miss. 1, 41 So. 498; See, also, *Thornton* v. *Natchez,* 129 Fed. 84; *Thornton* v. *Natchez,* 197 U. S. 620; *Thornton* v. *Natchez,* 212 U. S. 559; *Burke* v. *Shaw,* 59 Miss. 443; *Vaughan* v. *Hudson,* 59 Miss. 421; *Gabbert* v. *Wallace,* 66 Miss. 618; *Cole* v. *Coon,* 70 Miss. 634; Gibson's Suits in Chancery, section 555. Appellant is not concluded by the default judgment in cause No. 1620, because it is affirmatively shown that after

Connerly had been served with process and before any further action was taken in the matter, that Frances Manning, the complainant, died. Daniel's Chancery Practice (5 Ed.); *Farmers Loan & Trust Company* v. *Seymour,* 9 Page, 528; *Tarleton* v. *Cox,* 45 Miss. 430; 45 Miss. 556; 47 Miss. 544; 48 Miss. 650.

The decree in cause No. 1620 is not binding on appellant because it was not revived in the name of the heirs of Frances Manning. According to all of the authorities, if Frances Manning had any right to attack the deed to Connerly in question, for breach of condition, upon her death, that right descended to her heirs at law, and not to her administrator. Monographic notes to *White* v. *Bailey,* 23 L. R. A. (N. S.) 232; Daniel's Chancery Practice, 1508, 1538; 18 Ency. Pleading & Practice, 1101; Fletcher's Equity, Pleadings & Practice, section 859; *Root* v. *McFarrin,* 37 Miss. 17; *Hargroves* v. *Baskin,* 50 Miss. 194; *Bullock* v. *Sneed,* 13 S. & M. 293; *Moore* v. *Ware,* 51 Miss. 206.

Appellant is not concluded by the decree in cause No. 2037, undertaking to confirm the title in appellee. Connerly was not made a defendant to this proceeding and it was not alleged that Adams was the owner in possession, nor that there was no adverse possession of the land, while in truth and in fact, Adams was not in possession and Connerly was in possession, claiming the same openly and adversely.

It is elemental that decrees are not conclusive against those not made parties to the suit. In the case of *Brooks-Scallon Co.* v. *Slonger,* 115 Miss. 737, it is said: "It is the duty of a person filing a bill under this statute to see whether or not there is an adverse possession, in case the suit to confirm title does not lie, but the party will have to proceed to have the claim of such person cancelled, etc."

Section 3111 of the Code of 1906, limits the time for filing bills of review to within two years next after the

date of the final decree, and of course, the last proceeding cannot be considered as a bill of review. It must be held to be what appellee manifestly intended it should be a bill to set aside the former decree because it was void.

Moreover, if it was a bill of review, it would have been necessary to have made Connerly a party defendant to that bill, and to have him duly summoned into court. 3 Ency. Pleading & Practice, 593. Moreover, no order of the court was asked or obtained for leave to plead this bill. Manifestly it is not a bill of review.

There remains another reason why the decree of the chancellor cannot be upheld. George Connerly and Eugenia Green were tenants in common of this land on October 16, 1908, the date on which Eugenia Green undertook to acquire whatever title or claim of title that Frances Manning had to the property by reason of the alleged breach of the alleged condition in the deed. So that when Eugenia Green took the deed of Frances Manning on October 16, 1908, she acquired it for the common benefit of herself and her cotenant, George Connerly, and the law will not permit her to set up the title thus acquired in derrogation of her cotenant's title, but the law will assume no matter what motive prompted her in the act, that she acquired this title for the mutual benefit of herself and her cotenant.

Cotenants stand in such relation of mutual trust and confidence in respect to the common property, and to the common title and the common source of the title, that courts of equity will not permit one cotenant to acquire an adverse claim and affirm it for his exclusive benefit, by undermining the common title to the injury and prejudice of the interest of his cotenant. In such case, the purchasing tenant is regarded as holding the claim so purchased in trust for the benefit of his cotenant.

"This rule is said to be inflexible without regard to the consideration paid or the honesty of the intent for the reason that public policy requires it not only as a

shield to the parties represented, but as a guard against competition on the part of the representatives." 7 R. C. L. 858; Robinson v. Louis, 68 Miss. 69; Hignight v. Hignight, 65 Miss. 477; Harrison v. Harrison, 56 Miss. 174: Wyaat v. Wyaat, 81 Miss. —; Beaman v. Beaman, 90 Miss. 762; Stewart v. McTheney, 66 Miss. 21; Cohea v. Hemingway, 71, Miss. 22; Baker v. Richardson, 69 Miss. 394. The cases might be multiplied indefinitely, but the above are sufficient.

Conclusion. If this case should be affirmed, a manifest injustice and hardship will be worked upon appellant and his immediate vendor. Frances Manning conveyed this land to George Connerly and Eugenia Green not for any valuable consideration moving from her to Eugenia Green, but a good and valuable consideration moving to her from George Connerly. The deed was in consideration of services rendered and for the further consideration of Connerly supporting her during her lifetime, and the proof undisputably shows that Connerly immediately moved upon the premises and did support and take care of Frances Manning as long as she lived. This is proved, not by the testimony of the negro, whose testimony might have been more or less influenced by his interest in the outcome of the litigation, but by the testimony of Mr. McGuffy, a member of the board of supervisors, who knew the parties to the transaction, and testified to the declaration made by Frances Manning herself before she died.

It is respectfully submitted that this case should be reversed and remanded with directions to the court below to order an account between appellant and appellee for the rents, timber, etc.

E. J. Simmons, for appellee.

The fallacy of appellant's contention is evidenced when we reflect that he is really, after the lapse of many years and after his right to file a bill of review or to

appeal has expired, seeking to litigate *nunc pro tunc* what he conceives to have been in issue in the two chancery suits mentioned.

He erroneously supposes that Connerly may now interpose any defense he might have had and that the right of appellant to make the same defense exists by virtue of an alleged conveyance to him of Connerly's supposed rights, and this notwithstanding the notice on the *Lis Pendens* Record, the conveyance records of the county and the provisions of section 549, 550, and 570, of the Code of 1906. No doubt had counsel appeared for Connerly in the cases mentioned he would have made the same argument he now makes after the lapse of eight or ten years. For instance, he contends that appellant is not concluded by the decree in cause no. 1620 because of the holding of this court in *Dixon* v. *Milling Co.,* 102 Miss. 449; *Lee* v. *McMorries,* 107 Miss. 889, and the *Lowry case,* 111 Miss. 153, that a deed conveying land in consideration of an agreement to support grantor cannot be cancelled for a breach of the undertaking.

Clearly he misconceives the scope and character of the bill in said cause No. 1920. In the cases mentioned there was no expressed condition, a breach of which would divest the estate granted. In the instant case, however, the deed is on the usual printed form of warranty deed, but there appears in writing on the face thereof these words. ''The conditions of the above deed are that George Connerly on his part agrees to take care of Frances Manning for the remainder of her life, to provide food and raiment and to take care of her when she is disabled to care for herself. While the printed and written parts of a deed are equally binding, still, when they conflict, the writing part prevails. 13 Cyc., p. 605; *Hart* v. *Gardner,* 74 Miss. 153; *Atkinson* v. *Sinnott,* 67 Miss. 502.

Manifestly it was the intent of grantor to create a defeasible title only, and this intention when ascertained

will, under Hart-Gardner, supra, prevail.   Here the
conditions is in expressed terms, and the cases cited by
counsel are consequently inapplicable; nor is there mer-
it in his contention that there is no express power in the
writing to make re-entry for a condition broken.   Such
power need not be expressed in the deed, and without
such recital the conditions undoubtedly bound Connerly
upon his acceptance of the deed.   13 Cyc., pages 690 to
694; Tiedeman, Real Property (2 Ed.), sections, 271 and
276.

Nor is this a case where there was only a partial breach
or failure to perform on Connerly's part.   Since the bill,
now attacked after many years, charges that Connerly in
spite of his representations and promises in procuring
the instrument, put it on record and immediately drove
the aged and helpless grantor from the property.   There
is no pretense that Connerly's failure to litigate the mat-
ters complained of was due to the fraud of complainant,
but confessedly was due to his own negligence.   Stewart
v. Stebbins, 30 Miss. 66, cited in Moody v. Harper, 38
Miss. 625, distinguished in Berford v. Kersey, 48 Miss.
649; Metcalfe v. Perry, 66 Miss. 68; Cason v. Cason,
31 Miss. 578; Monk v. Horn, 38 Miss. 103; Cox v. Dixon,
51 Miss. 598.

Clearly the decree complained of is not void for want
of jurisdiction.   Connerly appeared to the suit generally,
its results was made known to him when he was ejected
from the premises. He made no complaint and took no
appeal.   Clearly it was not the duty of the complainant
to put in a defense for a defendant who had abandoned
any contention he might have made therein.

## B

That counsel fails fully to appreciate the conclusive
character of the decree of a court of competent jurisdic-
tion, both of person and property, is further illustrated

by the contention that he may now object to the decree in cause No. 1620 because taken upon a revivor in the name of the administrator of Frances Manning and without further process on George Connerly. Let me repeat, Connerly was summoned personally and appeared generally, and notice put upon the *Lis Pendens* Record, and he thus had all the notice of the pendency of the suit that was possible or that could be required by law.

It would appear from the authorities that an order of revival is conclusive upon the point whether the action had been properly revived in the name of the person therein named as plaintiff and whether a recovery could be had in his name. 1 Cyc., page 114.

Secondly: By appearing generally to the suit Connerly was in court for all purposes and by his conduct, as disclosed by this record, waived any right to insist upon an improper revival of the cause, even if it would be competent in this case to inquire into the sufficiency of the revival, which of course, in view of the authorities, cannot be done. *Railroad* v. *Glover,* 78 Miss. 467.

Again: Connerly could not in this suit object to the sufficiency or regularity of the revival, on the authortty of *Stewart* v. *Stebbins,* 30 Miss. 66.

Again; In the case of *Wall* v. *Wall,* 29 Miss. 409, it was attempted to avoid the effect of a will on the ground that the same was in realty a deed and not in any form a will; the court holding that the court had jurisdiction to determine these questions and was conclusively presumed to have determined the paper to be a will by admitting it to record.

This case therefore is direct authority for our contention here that the court in cancelling the deed of Connerly and in reviving the cause of action is conclusively presumed to have acted in perfect accord with the law and the facts of the case.

Attention is called also to the rule of the supreme court of the United States, announced in *Voorhees* v. *Jackson,* 10 Peter, 874, [96 L. Ed.,] 490, stated in the Wall case as follows: "The line which separates error in judgment from usurpation of power is very definite and is precisely that which denotes the cases where a judgment or decree is reversible only by the appellate court or may be declared a nullity collaterally when it is offered in evidence in an action concerning the matter adjudicated or purporting to have been so. In the one case it is a record importing absolute verity, in the other it is mere waste paper.

That a judgment or decree cannot be reviewed in a subsequent proceeding for errors and irregularities, even though serious enough to cause reversal or even though *quasi*-jurisdictional, see, in addition to the *Wall case, supra,* cited in 31, Miss., 595, 43 Miss. 49, 51 Miss. 598, 59 Miss. 172; the case of *Kanavagale* v. *Hamilton,* Annotated Cases 914B, 76.

Even if the authorities were not to the contrary the argument that the death of Frances Manning abated her action in the absence of a saving statute is manifestly unsound. At common law personal action did not survive and the inconvenience resulting from the defect in the common-law system of remedies on the death of a party led to the adoption of the statutes authorizing the survivorship of the original action, but when the wrong complained of affected primarily and principally property and property rights, and the injuries to the person are purely incidental, the action survives at common law and no statute was necessary. The common law distinction between actions which survive and those which do not is clearly unaffected by the statutes mentioned. It is too well settled for argument that when a suit is brought for specific property whereby the estate would be increased, the suit should be revived under our law in the name of the personal repre-

sentative. 1 Cyc., pages 47 to 54; 21 Ency. Pl. & Pr., 313, et seq.

An action to cancel a deed is not abated by death of plaintiff. *Thompson* v. *Landair*, 127 Georgia 557, 56 S. E. 707. Remedies administered in equity do not die with the party. *Warner* v. *Flack*, 2, A. L. R. 423. The contention that appellant is not concluded by the said decree in cause No. 1620 because the suit was not revived in the name of the heirs at law of Frances Manning is manifestly without merit when applied to the facts of this case. The court actually decreed the land to belong to the heirs at law of Frances Manning and with the intervention of appellee in cause No. 2037 they were brought into the same court by the personal service of appropriate process, appeared generally to the suit, as the record discloses, and accorded every legal right to make such defense as they might deem proper. How Connerly, who was actually in court and informed of every step in the progress of the litigation and who suffered an actual ouster from the land without appealing, can be heard to complain for the heirs at law of the irregularity mentioned is incomprehensible and, I submit, not worthy an answer.

In a legal sense and in fact Connerly was not in possession of the land. Certainly it is not competent for appellant, who acquired with full knowledge any supposed rights he now asserts, to prove that after the officer who had served the process and removed Connerly from the premises and put the appellee in possession thereof, had gone, Connerly, in the nighttime, illegally and contumaciously sipped back upon the land. The fact that he may have been in hiding around the premises does not warrant counsel in contending that he was in a legal sense in the possession of the land.

None of the authorities relied upon are applicable to the facts of this case and none of them warrant the inference that the palpable contempt by Connerly of the

process and authority of the chancery court constituted an adverse possession of the premises at the filing of appellee's bill No. 2037. Connerly had had his day in court, been put off the land, and the appellee put in possession thereof. Surely then in no view could fraud be imputed to Adams in not expressly naming Connerly or in failing to aver that there was no adverse possession of the premises. The logical and legal inference from the entire record is, there was no adverse possession and cases of which the *Brooks-Scanlan-Stogner case,* 75 Southern, 596, is a type, have no application. It will be recalled that that case was tried by the same chancellor who tried the case at bar and of course he was well aware of the essential difference in the two cases. If it had been the duty of appellee Adams to have investigated fully to determine whether he had lost the possession actually given him by the sheriff, a month or so before he instituted the suit mentioned he certainly would not have been expected to locate the vagrant Connerly, whose coming and going was in the nighttime and whose lips were sealed to aver that he was in possession of the property.

As regards Connerly, therefore, sections 549, 550 and 570 of the Code of 1906, renders the decree absolutely conclusive, even though he could be classed as an absent, unknown or absconding defendant.

The only remaining contention worthy of notice proceeds likewise from a misunderstanding of the facts of the case, it being contended that Eugenia Green was a tenant in common and could not buy from Frances Manning. The entire argument of counsel on this subject is fully answered by the opinion of Chief Justice SMITH in the case of *Shelby* v. *Rhodes,* 105 Miss. 255. The rule as there stated has no application where the circumstances surrounding the parties negative the confidential relation which is presumed to exist between tenants in common and where they are asserting hostile claims

with reference to the common property. The tenancy in common upon which counsel relies was, so far as his client is concerned, absolutely destroyed with the cancellation of the deed under which it was created and there was no cotenancy thereof at the institution of this suit. 30 Cyc., 178, citing *White* v. *Leflodt,* 78 Miss. 173; *Bland* v. *Bland,* 105 Miss. 478. That complainant must first establish his title before he can have partition, see, 15 Enc. Pl. & Pr., 777, citing *Harrison* v. *Day,* 39 Miss. 392, 5 Sm. & M. 746, 33 Miss. 149.

In support of the argument that the decrees mentioned conclude appellant, the court is referred to the following authorities: *Wall* v. *Wall,* 28 Miss. 409.; *Cannon* v. *Cooper,* 39 Miss. 789; *Deford* v. *Furniss, Admr.,* 43 Miss. 132; *Railroad* v. *Glover,* 78 Miss. 467; *Moody* v. *Harper,* 38 Miss. 625, distinguished; 48 Miss. 649; 66 Miss. 68; 67 Miss. 409; 23 Cyc. 1074, 1075, 1090; 60 Miss. 870; 69 Miss. 856, 58 Miss. 639; 41 Miss. 563; 31 Miss. 578; 30 Miss. 66; 63 Miss. 198; Annotated Cases 1914B, page 76; 57 Miss. 183; 59 Miss. 572; 58 Miss. 514; 86 Miss. 641.

Conclusion. It is therefore insisted that appellant failed to show such title as warranted the court in decreeing a partition of the land described. The fraud and inequitable conduct of Connerly in procuring from his wife's mother the deed upon which appellant relies, his brutal indifference to her welfare, his driving her from her home, his refusal to undertake a justification of his conduct when challenged in court of equity, his palpable and contumacious conduct in disregarding the lawful process of the court, his deliberate disregard of the remedies, if any there were, provided by the law for safeguarding his interests, his failure to petition to be admitted in the proceeding at any time within two years, while confessedly having knowledge of every step in the proceeding, the absence of any consideration moving from him to his injured benefactor and mother-in-law;

the fact that appellee, in good faith and for a valuable consideration, not only acquired the legal title to the property but invoked every process of the court in good faith to secure the right so acquired; and the fact that undisputedly all this was known to appellant Criscoe, who dealt with a self-confessed convict, are considerations which will leave the court no doubt as to where the inherent right and equity of this matter abides.

I submit that the decree of the court below was the only decree possible, consistent with the law and with justice as administered in a court of equity, and that this case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant filed his bill in the chancery court for a partition of certain lands and also for an accounting for rents, alleging that the complainants and defendants are tenants in common and owners in fee of said lands, and that the defendant had been in possession since 1912 collecting rents thereon, and that the defendant had converted certain timber, praying for a partition and accounting of rents and profits. The defendant answered denying the complainant's title and denying that complainant owned any interest in the said lands, and setting up title in himself, and alleging that he filed the bill in 1911 in the chancery court to confirm and quiet the title of the defendant to said land, and that the court had decreed in his favor in said suit against certain particular defendants named in the bill and as against all unknown defendants and claimants, and the defendant makes his answer a cross-bill, alleging that he is legal and equitable owner in fee simple and deraigning his title thereto, and praying that the claim of the complainant be canceled as a cloud or doubt and for other relief. A decree of the cause referred to, under which the defendant claims his title was confirmed, is made an exhibit to his

123 Miss.—4.

cross-bill. The complainant and cross-defendant answered the cross-bill of the defendant, denying that the defendant was the legal and equitable owner in fee simple and averring that the complainant and cross-defendant is the owner of a half interest therein, and setting up that Frances Manning, as owner in the chain of title of both complainant and defendant, conveyed to one George Connerly and Gene Green a deed to the lands described in the bill of complaint, making a copy of the deed an exhibit to the answer, and denying that the suit referred to in the cross-bill affected his right or title, because he was not made a defendant in said suit, and because at the time said suit was filed George Connerly was in possession of said land, claiming to be the owner of an undivided one-half interest, and that he was not made a party to the said suit nor summoned and was not a nonresident, and further alleging that the bill in that suit neither alleged that the complainant was in possession, nor that there was no adverse occupancy of the said land. The chancellor decreed for the defendant, and complainant appeals.

It appears from the evidence that on the 31st day of January, 1908, Frances Manning conveyed to Gene Green and George Connerly her interest in the land described in the bill of complaint by a deed in long form of printed conveyance in this state, and in the blank space intended for the description wrote the description of the land and in addition thereto the following:

"The conditions of the above deed are that George Connerly on his part agrees to take care of Frances Manning for the remainder of her life, to provide food and raiment, and to care for her when she is disabled to care for herself."

It appears that, after the making of this deed of conveyance, Frances Manning filed the bill in the chancery court to cancel the deed for a breach of the alleged condition above set out, and that the grantees George Con-

nerly and Gene Green were made parties defendant to said bill and duly summoned in the suit to show cause why the relief should not be granted.   After these defendants were summoned into court and before further proceedings were taken therein, except the defendant obtained leave to plead, Frances Manning died, and one J. F. Holmes, administrator, appeared and procured a revivor of the said suit in his name as administrator, and thereafter took decree *pro confesso* and final decree against George Connerly and Gene Green, canceling the deed and ordering them to yield up possession to the complainant.   This final decree was dated the 28th day of May, 1909, and was never appealed from, nor was any bill of review filed within the statutory period for a bill of review; and on the 21st day of January, 1911, the writ of assistance was issued out of the chancery court and George Connerly and other parties were removed from the premises. After the sheriff removed Connerly and went away, Connerly immediately returned to the premises and occupied the same until about the year 1913, when a second writ of assistance was issued, and he was again removed from the premises and was prosecuted and convicted for trespassing thereon.   On the 27th day of January, 1914, George Connerly and Eliza Connerly conveyed to J. L. Criscoe, the appellant, for a purported consideration of one thousand dollars the land in question.

At the time Frances Manning filed her suit, a *lis pendens* notice was filed giving notice of the suit and description of the land.  Subsequently Frances Manning conveyed to Ceph Green and wife a part of the land, and Ceph Green and wife conveyed to Adams, the appellee.   Thereafter Adams filed a bill in chancery court to vacate and set aside so much of the decree in the suit of Frances Manning against George Connerly and Gene Green as affected his title and for a confirmation of his title and

for possession. This bill was filed in November, 1911, and the numerous parties, including Eliza Connerly, wife of George Connerly, as heirs at law of Frances Manning, deceased. A deed from Frances Manning to Ceph Green and wife, Eugenia Green, bears date of the 16th day of October, 1908. A decree *pro confesso* was taken February 12, 1912, and the final decree the 23d day of April, 1912, in the suit of Adams against the heirs of Frances Manning and her administrator, and there was no appeal, and a writ of possession was executed and Connerly and family moved off of the land and Adams put in possession thereof on the 16th day of January, 1913.

The appellant assigned for error that the court below erred in holding that the appellant was concluded by the decree of May 28, 1909, canceling the deed to George Connerly and Gene Green; second, that the court erred in holding that appellant was concluded by the proceedings in cause No. 2037, styled *L. M. Adams* v. *J. F. Holmes et al., Administrator and Heirs of Frances Manning*, dated April 24, 1912, and that the court erred in holding that the appellant was not the owner of an undivided one-half interest in the land sought to be partitioned and erred in dismissing complainant's bill and canceling his title and confirming and quieting the title of the appellee.

Two propositions are relied on chiefly by the appellant. First, it is insisted that there was no notice to George Connerly of the revivor of the suit of *Frances Manning* v. *George Connerly* after the death of Frances Manning; and, second, that there could be no revivor in the name of the administrator, but that the revivor would have to be made in the name of the heirs. In other words, it it insisted that a revivor by the administrator of the complainant without notice to the defendant is void and that in fact there could be no revivor in the name of the administrator at all. Section 724, Code of 1906 (section 507, Hemingway's Code), reads as follows:

"If there be two or more-plaintiffs or defendants in any suit, and one or more of them die, if the cause of action survive to the surviving plaintiff or against the surviving defendant, the suit shall proceed in the name of the surviving plaintiff against the surviving defendant; and where either party shall die between verdict and judgment, such death need not be suggested in abatement, but judgment may be entered as if both parties were living; and if, on the death of any plaintiff in actions which survive, before verdict, the heir, legatee, or devisee, executor, administrator, or other legal representative of such deceased party shall not appear and become a party to the action, on or before the second term of the court next after the death of such party shall have been suggested on the record, the action shall be dismissed, unless good cause be shown to the contrary."

Section 687, Code of 1906 (section 465, Hemingway's Code), reads as follows:

"All things contained in this chapter, not restricted by their nature or by express provision to particular courts, shall be the rules of decision and proceeding in all courts whatsoever."

Both of these sections appear in the chapter of the Code on Circuit Courts, and it is argued that section 724, Code of 1906 (section 507, Hemingway's Code), has no application to a suit in chancery; and that even under these sections that notice ought to be given to the defendant to revive against the defendant. There is no special section made specially applicable to the chancery court with reference to revivor, and, as the legislature intended the provisions of the circuit court chapter to apply to all courts when not restricted in their nature or by express provisions to particular courts, we think that section 724, Code of 1906 (section 507, Hemingway's Code), is applicable to the chancery court. In this section it is provided that where either party should die the cause of action survives in favor

of the surviving plaintiff or against the surviving defendant. In actions before verdict, if the heir, legatee, devisee, executor, administrator, or other legal representative of the deceased party, shall not appear or become a party to the action on or before the second term of the court next after the death of such party shall have been suggested on the record, the action shall be dismissed unless good cause be shown to the contrary. This section changes the common-law rule in circuit courts, and, as we construe it, applies also to the chancery court, and the action is not dismissed, but remains a pending suit until the second term, when, if no action is taken, the court dismisses it. In other words, the defendant, being in court, must take notice of proceedings suggesting death and reviving the suit for this length of time, and it is not necessary to bring them into court with a new notice. In the proceedings before us the administrator of the deceased complainant made timely application for a revivor of the suit in his name for the benefit of the heirs, and defendants were bound by the proceedings made after such revivor, and they made no effort to appeal nor did he contest the suit in the court below; and although he was put out of possession under this judgment, he took no steps to vacate or correct the judgment so rendered. Independent of the statute above quoted, a suit in equity does not abate or rather does not terminate in equity at the death of a party, but merely suspends the proceedings therein so that on removal of the cause of abatement suit may be revived and proceeded with. 1 C. J. 27.

At common law the death of the plaintiff or the defendant was the termination of the suit, though it did not destroy the right to bring a new suit in certain cases.

In our view the administrator was authorized to revive the suit. Under certain conditions the administrator may resort to the land for the payment of debts, and it is his duty to pay taxes and preserve the es-

tate of decedent committed to his care. This is a collateral attack upon that decree, and whether the revivor in his name might have been successfully contested at the time and in the court where the motion for revivor was made is immaterial here. If for any purpose the administrator was authorized or had an interest in the land of his decedent, his act in reviving the suit and prosecuting it to effect operated for the benefit of the heirs, and the appellant is not in a position now to complain of the court's action. We cannot review the court's action in that case for mere irregularities.

It is contended by the appellant also that the deed of Frances Manning to Connerly could not be canceled for breach of his agreement and that suit would have to be brought against Connerly personally. We think the provision of the deed relied on as a condition justifying forfeiture was a question which the chancellor had authority to adjudicate. He had the power to adjudicate whether it was a condition for the breach of which a forfeiture might be taken, and, whether his decision was right or wrong, it cannot be considered on collateral attack. The authorities relied upon by the appellant would be pertinent on a direct attack, but the court having jurisdiction to decide the controversy, and no appeal having been taken, and the period for a bill of review having expired by limitation. Connerly and his vendees are bound by it. It follows from what we have said that the complainant was charged with notice by the *lis pendens* record of the result of this suit, and that all right, title, and interest of George Connerly was canceled by this decree. The suit of *Adams* v. *Heirs of Frances Manning,* confirming his title, is effective as against Eliza Connerly, wife of George Connerly. The two suits completely extinguish the rights of the complainant. It is true that George Connerly was not a party defendant to the suit of *Adams* v. *Heirs and Administrator of Frances Manning,* and that he was on the land at the

time, and his interest, if any he had, could not have been affected by the suit for the reason that a party filing a bill to confirm title should make parties defendant all persons in the actual possession of the property. However, that does not affect the result here, because all of the right that George Connerly ever had was canceled by the first decree. The court below reached the same conclusion, and the judgment will be affirmed.

*Affirmed.*